# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

CASE NO. _____

**PATHWARD, NATIONAL ASSOCIATION**
**f/k/a AFS/IBEX,**

      **Plaintiff,**

v.

**OLIVE GLEN CONDOMINIUM**
**ASSOCIATION, INC.**

      **Defendant.**

_____/

## COMPLAINT

Pathward, National Association f/k/a AFS/IBEX ("AFS/IBEX" or "Plaintiff"), by its undersigned attorneys, files this Complaint for money judgment against Olive Glen Condominium Association, Inc. ("Olive Glen" or "Defendant"). In support of this Complaint, Plaintiff states as follows:

## NATURE OF ACTION

1. This civil action is commenced by Plaintiff to recover a loan made to Defendant Olive Glen. Plaintiff made a loan to Defendant Olive Glen in 2021 to enable Defendant to purchase "windstorm" insurance coverage. Defendant Olive Glen has failed to repay the loan as and when due, despite repeated demands by Plaintiff.

## JURISDICTION AND VENUE

2. Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction because Plaintiff and Defendant are citizens of different states, and the amount in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00).

3. Specifically, as to diversity jurisdiction, Plaintiff is a National Banking Association. Its main office is in Sioux Falls, South Dakota. Thus, Plaintiff is a citizen of South Dakota for diversity purposes. AFS/IBEX changed its name to Pathward, National Association effective July 13, 2022.

4. Defendant Olive Glen is a condominium association, incorporated and existing under the laws of the State of Florida.

5. For purposes of diversity jurisdiction, Defendant Olive Glen is, upon information and belief, a citizen and resident of the State of Florida, and complete diversity exists between Defendant Olive Glen and Plaintiff.

6. This Court has personal jurisdiction over Defendant because Defendant Olive Glen is a Florida condominium association that resides in this judicial district.

7. Pursuant to 28 U.S.C. § 1391(b)(1), venue in this judicial district is proper because the Defendant is a resident of the state in which this judicial district is located, as that term is defined in 28 U.S.C. § 1391(c).

## PARTIES

8. Plaintiff is a national banking association formed under the laws of the United States with its principal place of business located in Sioux Falls, South Dakota.

9. Plaintiff is a secured creditor of the Defendant Olive Glen pursuant to the terms of that certain Commercial Premium Finance Agreement dated June 28, 2021, entered into by

Defendant Olive Glen Condominium Association, Inc. (the "Loan Agreement"), more particularly described herein.

10. Defendant Olive Glen is a condominium association, incorporated and existing under the laws of the State of Florida. Upon information and belief, the condominium property, for which Olive Glen was established, is located at 3102 NW 3rd Ave, Pompano Beach, FL 33064 and may be commonly known as Olive Glen.

## FACTS

### The Loan Agreement

11. On or about June 28, 2021, Defendant Olive Glen entered into and executed the Loan Agreement with Plaintiff. A true and correct copy of the Loan Agreement is attached hereto as Exhibit A and incorporated herein by reference.

12. Under the terms of the Loan Agreement, Plaintiff advanced $223,183.44 to enable the Defendant Olive Glen to purchase the following coverages (collectively, the "Insurance Coverage"): (i) windstorm (WIND) (Policy No. ending 9001); (ii) windstorm (WIND) (Policy No. ending 0CSP); (iii) windstorm (WIND) (Policy No. ending 397-0); and (iv) windstorm (WIND) (Policy No. ending 1414).

13. In consideration for Plaintiff's loan, Defendant Olive Glen promised, among other things, to repay the loan, plus interest at 4.5%, in eleven (11) monthly installments of $20,821.65.

14. All installment payments under the Loan Agreement were due the 28th day of each month, commencing with an installment payment on July 28, 2021.

15. Repayment of the loan under the Loan Agreement is secured by a security interest and assignment in all unearned premiums under the Insurance Coverage (the "Collateral"),

coupled with a limited power of attorney to cancel the Insurance Coverage upon a default.  See Loan Agreement at 1, ¶ 3; 3 ¶ 10.

### Funding of the Loan and Cancellation of Insurance Coverage

16.     Plaintiff accepted the Loan Agreement and funded the loan as contemplated by the Loan Agreement.

17.     Defendant Olive Glen defaulted on its obligations to pay as and when due through the term of the Loan Agreement.  Defendant made a total of three payments out of eleven that were required.  Defendant made one payment on time and two other payments after their due dates.  The Defendant attempted to make two other payments; however, the payments were returned for insufficient funds.

18.     Defendant Olive Glen, on its own initiative, cancelled the Insurance Coverage with an effective date of cancellation as of November 17, 2021.

19.     After cancellation and over time, all four insurers who bound the Insurance Coverage returned unearned premiums under the policies of insurance to Plaintiff.  Such amounts were applied to the balance of the loan due from the Defendant, but did not pay the balance in full.

20.     Defendant Olive Glen has made no further payments to Plaintiff under the terms of the Loan Agreement, notwithstanding its promise to do so under the terms of the Loan Agreement.

21.     Specifically, Defendant Olive Glen has failed to pay Plaintiff for the outstanding balance under the Loan Agreement (including late fees), which remains due after the insurers returned the unearned premiums.

22. Plaintiff has communicated with Defendant Olive Glen and its counsel concerning payment of the outstanding balance and has made demand for payment.

23. Defendant has failed and refused to pay Plaintiff, notwithstanding the express terms of the Loan Agreement requiring payment.

24. As of July 18, 2022, after application of the unearned return premiums received by Plaintiff, Plaintiff is owed no less than $91,869.19. Interest continues to accrue. Attorneys' fees and costs continue to accrue and are recoverable under the terms of the Loan Agreement. See Loan Agreement at 3 ¶ 11.

## COUNT I:  BREACH OF CONTRACT

25. The foregoing allegations are incorporated herein by reference as if stated fully herein.

26. Plaintiff made a loan to the Defendant under the terms of the Loan Agreement.

27. Defendant has failed to repay the loan as required by the Loan Agreement, despite demand for payment.

28. Plaintiff suffered damages as a result of Defendant's nonpayment and conduct.

29. Plaintiff has incurred attorneys' fees and costs in pursuing collections of amounts owed under the Loan Agreement.

30. Attorneys' fees and costs are recoverable under the terms of the Loan Agreement.

WHEREFORE, Plaintiff requests entry of a money judgment in favor of Pathward, National Association fka AFS/IBEX and against Defendant Olive Glen Condominium Association, Inc. in the amount of no less than $91,869.19, plus interest through the date of judgment, post-judgment interest after entry of judgment, and attorneys' fees and costs.

4890-8329-2453.v5

## COUNT II:  UNJUST ENRICHMENT

31. The foregoing allegations are incorporated herein by reference as if stated fully herein.

32. Plaintiff made a loan to the Defendant under the terms of the Loan Agreement.

33. Defendant has failed to repay the loan as required by the Loan Agreement, despite demand for payment.

34. To allow Defendant to retain the benefit of the loan without repayment would unjustly enrich Defendant.

35. Plaintiff has suffered damages as a result of Defendant's conduct.

36. Plaintiff has incurred attorneys' fees and costs in pursuing collections of amounts owed under the Loan Agreement.

37. Attorneys' fees and costs are recoverable under the terms of the Loan Agreement.

WHEREFORE, Plaintiff requests entry of a money judgment in favor of Pathward, National Association fka AFS/IBEX and against Defendant Olive Glen Condominium Association, Inc. in the amount of no less than $91,869.19, plus interest through the date of judgment, post-judgment interest after entry of judgment, and attorneys' fees and costs.

4890-8329-2453.v5

Dated this 5th day of August, 2022

        **MARKOWITZ RINGEL TRUSTY & HARTOG, P.A**.
        9130 S. Dadeland Blvd., Suite 1800
        Miami, Florida 33156
        Telephone:  (305) 670-5000
        Facsimile:   (305) 670-5011
        Primary Email: litservice@mrthlaw.com
        By: *s/ Adrian Delancy*
            ADRIAN DELANCY
            Fla. Bar No.: 75337
            adelancy@mrthlaw.com

        -and-

        **MILES & STOCKBRIDGE P.C.**
        100 Light Street
        Baltimore, Maryland 21202
        Phone:  (410) 385-3762
        Fax:     (410) 385-3700
        Email:   jperrell@milesstockbridge.com
        Joel L. Perrell, Jr.
        By: *s/ Joel L. Perrell, Jr.* [1]
            JOEL L. PERRELL, JR.
            Md. Bar No.: 25550
            jperrell@milesstrockbridge.com

        *Attorneys for Pathward, National Association*
        *f/k/a AFS/IBEX*

---

[1] A motion to appear *pro hac vice* shall be filed shortly.

4890-8329-2453.v5

**EXHIBIT A**



# PREMIUM FINANCE AGREEMENT

☑ COMMERCIAL
☐ ADDITIONAL PREMIUM

**AFS/IBEX**
A division of MetaBank®

PO Box 224528
Dallas, TX 75222-9762
Tel: (800) 299-5626
Fax (214) 954-0537

Acct #   v3

| AGENT'S NAME AND ADDRESS   CODE: A16246 | BORROWER'S NAME AND ADDRESS |
|---|---|
| JAG Insurance Group-Coral Gables<br>999 Ponce De Leon Blvd<br>Ste 800<br>Coral Gables, FL 33134<br>(305) 842-3600 | Olive Glen Condominium Association, Inc<br>2601 South Bayshore Drive, 18th Floor<br>Coconut Grove, FL 33133 |

| A. Total Premiums | B. Down Payment | Unpaid Principal Balance | C. Document Stamp Tax | D. Amount Financed (A - B + C) | E. Finance Charge | F. TOTAL OF PAYMENTS (D + E) | ANNUAL PERCENTAGE RATE |
|---|---|---|---|---|---|---|---|
| $ 263,653.75 | $ 40,470.31 | $ 223,183.44 | $ 784.00 | $ 223,967.44 | $ 5,070.71 | $ 229,038.15 | 4.500 % |

| Payment Schedule | NUMBER OF PAYMENTS | AMOUNT OF EACH PAYMENT | FIRST PAYMENT DUE |
|---|---|---|---|
| | 11 | $ 20,821.65 | 7/28/2021 (Monthly) |

Quote Number: 3771375
Date Generated: 7/1/2021 8:28:18 AM

## SCHEDULE OF POLICIES

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY | NAME OF THE INSURANCE COMPANY AND NAME/ADDRESS OF GENERAL OR POLICY ISSUING AGENT | TYPE OF COVERAGE | POLICY TERM | PREMIUM |
|---|---|---|---|---|---|
| TBI | 6/28/2021 | C05581-Westchester Surplus Lines Ins Co-GA Alpharetta<br>G06388-Jencap Ins Services Inc-GA Alpharetta<br>[ME:35.000 %, CX:10]     [HP, 90%PR] | WIND<br>Ernd. Taxes/Fees<br>Fin. Taxes/Fees | 12 | 110,510.00<br>50.00<br>5,532.00 |
| TBI | 6/28/2021 | C05238-*Lloyds Of London<br>G06881-AmWINS Brokerage of GA- Atlanta<br>[ME:35.000 %, CX:10]     [HP, SR] | WIND<br>Ernd. Taxes/Fees<br>Fin. Taxes/Fees | 12 | 65,000.00<br>815.00<br>3,290.75 |
| (POLICIES CONTINUED ON NEXT PAGE.) | | | | | |
| 100% OF ALL FEES AND TAXES MUST BE INCLUDED | | TOTAL PREMIUMS must agree with Block "A" above | | TOTAL | $ 263,653.75 |

98,466.78,58,256.87,44,109.52,22,350.27

## Security Agreement

1. **DEFINITIONS**: The above insured ("Borrower" or "Insured") is the debtor. AFS/IBEX, a division of MetaBank®, National Association, is the lender to whom the debt is owed (LENDER). Singular words shall mean plural and vice versa as may be required in order to give the agreement meaning "insurance company or company", "insurance policy or policy", and "premium" refer to those items listed under "Schedule of Policies". "Loan Documents" means all documents and instruments executed by Borrower in connection with this Agreement.

2. **PROMISE TO PAY:** Borrower promises to pay LENDER the total amount in Block "F" above until paid in full. This total equals the amount financed together with interest at the rate identified above computed in accordance with the Rule of 78's. The monthly payment amount reflected above will be due on the same day each month. Payments include principal and interest. Insured will pay LENDER at its address above, or such other place LENDER may designate in writing.

3. **SECURITY INTEREST**: Borrower hereby grants LENDER a security interest in all insurance policies listed herein and all unearned premium, returned premium, dividend payments, and loss payments which reduce the unearned premiums thereof ("Collateral"). Borrower assigns to LENDER as security for the total amount payable in this Agreement any of the above which may become payable under the insurance policies, subject to any mortgagee or loss payee interests. Borrower agrees to take whatever actions are requested by LENDER to perfect and continue LENDER'S security interest in the Collateral.

4. **LATE CHARGE:** For any installment payment received more than five (5) days (or such greater number of days required by applicable law) after the due date, Borrower agrees to pay a late charge of up to 5% of such installment.

The undersigned warrants and agrees:
NOTICE TO INSURED: (1) DO NOT SIGN this agreement until you have read all pages and filled in any blank spaces. (2) When signed below by you, or on your behalf, you (Borrower) acknowledge receipt of a copy this Agreement, attest to having full power and authority to enter into this Agreement and sign on behalf of all entities named above as Borrowers, and that you understand and agree to the provisions printed above and in the ADDITIONAL PROVISIONS section of this Agreement and that both the front and any subsequent pages constitute the Agreement between Borrower and Lender. (3) You understand that this is for commercial policies and the producer may be receiving compensation from the LENDER for the preparation and administration of this Agreement as further described below.

Borrower hereby requests LENDER to pay the financed portion of its insurance policy premiums listed above, on its behalf and **AGREES TO THE PROVISIONS OF THIS AGREEMENT. INCLUDING THE PROVISIONS ABOVE AND THOSE THAT FOLLOW.**

Date  6/28/21                              _[signature]_
                                           SIGNATURE OF THE INSURED(S) OR DULY AUTHORIZED AGENT OF INSURED(S)

Q# 3771375 PRN:070121 CFG:AFSIBEXSF L:101 DP%:15.000 PA RT:JAGDD:0 BM:Invoice  Qtd For:A16246 DOWN MEMOS

The undersigned warrants and agrees:       **PRODUCER REPRESENTATIONS:**
(1) Insured has received a copy of this agreement, (2) the policies are in full force and effect and the information in the schedule of policies and the premiums are correct, (3) Insured has authorized this transaction, recognizes the security interest assigned herein, (4) to hold in trust for LENDER any payments made or credited to Insured through or to the undersigned, directly, indirectly, actually or constructively by any of the insurance companies and to pay the monies to LENDER upon demand to satisfy the then outstanding indebtedness of Insured and that any lien the undersigned now has or hereafter may require on any return premium arising out of the above listed insurance policies is subordinated to LENDER lien or security interest herein, (5) there are no exceptions to the policies financed other than those indicated and the policies comply with LENDER'S eligibility requirements, (6) the policies can be cancelled by Insured or the company and the unearned premiums will be computed on the standard short rate or pro rata table except as indicated. (7) that if Insured is subject to any bankruptcy or insolvency proceeding that is known to Producer, it must be disclosed to LENDER. (8) The originator of this finance agreement may receive compensation form the lender for aiding in the preparation of this agreement and payment of the finance premiums.

Date  6/28/21                              _[signature]_
                                           SIGNATURE OF DULY AUTHORIZED AGENT OR BROKER OF INSURED(S)

INPUT1 - AFSIBEX_PFA_METAV03(04/18)          Page 1 of 3

Olive Glen Condominium Association, Inc
Quote# 3771375

| SCHEDULE OF POLICIES (Continued) | | | | | |
|---|---|---|---|---|---|
| POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY | NAME OF THE INSURANCE COMPANY AND NAME/ADDRESS OF GENERAL OR POLICY ISSUING AGENT | TYPE OF COVERAGE | POLICY TERM | PREMIUM |
| TBI | 6/28/2021 | C06428-StarStone Specialty Ins Co-IL<br>G06881-AmWINS Brokerage of GA- Atlanta<br>[ME:35.000 %, CX:10]     [HP, 90%PR] | WIND<br>Ernd. Taxes/Fees<br>Fin. Taxes/Fees | 12 | 49,500.00<br>35.00<br>2,476.75 |
| TBI | 6/28/2021 | C06024-Kinsale Insurance Co<br>G06881-AmWINS Brokerage of GA- Atlanta<br>[ME:25.000 %, CX:10]     [HP, 90%PR] | WIND<br>Ernd. Taxes/Fees<br>Fin. Taxes/Fees | 12 | 25,000.00<br>185.00<br>1,259.25 |

Olive Glen Condominium Association, Inc
Quote# 3771375

## ADDITIONAL PROVISIONS OF SECURITY AGREEMENT

5. **DEFAULT:** Each of the following shall constitute an event of default under this Agreement:
   (a) Insured does not pay any installment according to the terms of this Agreement.
   (b) LENDER, in good faith, believes that the policy has been cancelled, modified, is no longer in effect, or was never in existence.
   (c) Insured does not comply with any of the terms of this Agreement.
   (d) Insured or insurer voluntarily or involuntarily becomes the subject of a bankruptcy, receivership or any other kind of insolvency proceeding.
   (e) If Insured is a business and stops doing business or ceases to be qualified to do business. LENDER at its option may enforce payment of this debt without recourse to the security given to LENDER.
   (f) Any warranty, representation or statement made or furnished to LENDER by Borrower or on Borrower's behalf under this Agreement is false or misleading in any material respect, either now or at the time made or furnished, or becomes false or misleading at any time thereafter.

6. **CANCELLATION AND LENDER'S RIGHTS IN EVENT OF DEFAULT:** In the event of default, LENDER may cancel the insurance policies and the unpaid balance due to LENDER shall be immediately due by Borrower. Borrower hereby waives presentment, protest, and notice of dishonor. No delay or omission on LENDER's part to exercise any right or power arising hereunder will impair any such right or power or be considered a waiver of such right or power, nor will Lender's action or inaction impair any such right or power. Any payments made to LENDER after LENDER's Notice of Cancellation of the insurance policies has been mailed may be credited to the Borrower's account without affecting the acceleration of this Agreement and without any liability or obligation on LENDER's part to request reinstatement of the cancelled insurance policies. If there is a balance due after LENDER receives the unearned premiums, dividends, or loss payments from the insurance company then Borrower will pay the balance to LENDER with interest at the rate shown in this contract. If LENDER requests reinstatement, Borrower agrees that LENDER has no liability to Borrower if the policy is not reinstated. Only the insurance company has the authority to reinstate a policy financed pursuant to this Agreement.

7. **PREPAYMENT/REFUNDS:** Borrower shall have the right to prepay, in whole or in part, the amounts due hereunder at any time without penalty. If Borrower pays the total amount in Block "F" on page 1 early, Borrower shall receive a refund of the unearned finance charge computed in accordance with the Rule of 78s. If such prepayment in full occurs before the 1st installment due date, lender shall retain the finance charge which could be retained if the 1st installment period were 1 month and the loan were prepaid in full on the 1st installment due date. Any finance charge in excess of such amounts shall be refunded to Borrower. If a refund is less than $1.00, no refund shall be made.

8. **DOCUMENT STAMP TAX:** Fees assessed for state and government recording services as determined by applicable law.

9. **RETURNED PAYMENT CHARGE:** Insured will be assessed a returned payment charge of $15, if permitted by applicable law, for each payment returned to Lender because Insured had no account or insufficient funds in the payor bank.

10. **LIMITED POWER OF ATTORNEY:** Effective upon the occurrence of an event of default under this Agreement and without any further action on the part of any party, Borrower irrevocably appoints LENDER, as its ATTORNEY-IN-FACT with full authority to cancel the insurance policies under this Agreement and receive all sums assigned to LENDER or in which it has granted LENDER a security interest. LENDER may execute and deliver on Borrower's behalf all documents, instruments of payment, forms, and notices of any kind relating to the insurance policies in furtherance of the premium finance agreement.

11. **COLLECTION COSTS AND FEES:** LENDER may hire or pay someone else to help collect unpaid amounts Borrower owes under this Agreement. To the extent not prohibited by applicable law, Borrower will pay LENDER any and all costs and expenses of collection, including, without limitation, reasonable attorneys' fees and court costs, regardless whether a lawsuit is commenced as part of the collection process, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and all other costs incurred or paid by LENDER in pursuing collection of amounts due under this Agreement or in exercising, enforcing, or defending LENDER's rights or remedies under this Agreement.

12. **SPECIAL INSURANCE POLICIES:** If the insurance policy issued to Insured is auditable or is a reporting form policy or subject to retrospective rating, Borrower agrees to promptly pay the insurance company the difference between the actual earned premium generated for the policy and the premiums financed under this Agreement.

13. **ADDITIONAL PREMIUMS:** Only those premiums shown will be advanced on behalf of Borrower. Payment of any additional premiums is the responsibility of Borrower. Should the Borrower desire to finance any additional premiums, written request must be provided to LENDER.

14. **SUCCESSORS AND ASSIGNS:** All legal rights given to LENDER shall benefit LENDER's successors and assigns. Insured agrees not to assign the policy without LENDER's written consent except for the interest of mortgagees and loss payees.

15. **BORROWER WARRANTIES AND REPRESENTATIONS:**
    (a) Borrower warrants to LENDER that the insurance policies listed in the above schedule have been issued to Insured and are in full force and effect and that the Borrower has not assigned any interest in the policies except for the interest of mortgagees and loss payees.
    (b) Borrower represents that it is not insolvent or presently the subject of any insolvency proceeding, nor are any such proceedings contemplated, or if the named Borrower is the subject of such proceeding, Borrower has notified LENDER in writing.
    (c) The execution and delivery of this Agreement will not violate any law or agreement governing Borrower or to which Borrower is a party, and its certificate or articles of incorporation and bylaws do not prohibit any term or condition of this Agreement.
    (d) Borrower will promptly notify LENDER in writing at LENDER'S address on the first page of this Agreement (or such other addresses as LENDER may designate from time to time) prior to any change in Borrower's name, address, or any other change that directly or indirectly relates to this Agreement.

16. **RIGHT OF SETOFF:** To the extent permitted by applicable law, LENDER reserves a right of setoff in all Borrower's accounts with LENDER. This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. This does not include any accounts for which setoff would be prohibited by applicable law. Borrower authorizes LENDER, to the extent permitted by applicable law, to charge or setoff all sums owed to LENDER against any and all such accounts, and, at LENDER'S option, to administratively freeze all such accounts to protect LENDER'S charge and setoff rights provided in this paragraph.

17. **JURY WAIVER: LENDER and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either LENDER or Borrower against the other.**

18. **GOVERNING LAW AND VENUE:** This Agreement will be governed by federal law applicable to LENDER and, to the extent not preempted by federal law, the laws of the State of South Dakota without regard to its conflict of law provisions. If there is a lawsuit, Borrower agrees upon LENDER'S request to submit to the jurisdiction of the courts of Lincoln County, State of South Dakota.

19. **GENERAL PROVISIONS:** Borrower agrees that its Electronic Signature affixed to this Agreement or any other Loan Document is intended to authenticate this Agreement or such other Loan Document, is intended to and will legally bind Borrower, and will have the same force and effect as if Borrower had manually signed and physically delivered it. "Electronic Signature" means any electronic activity attached to or logically associated with a record and adopted or effective by a party with the intention to execute it. In any proceeding, Borrower waives any objection that this Agreement or such other Loan Document is invalid because of its execution by any party by Electronic Signature. Borrower has sole responsibility to ensure that this Agreement or any such other Loan Document is executed on its behalf only by persons authorized to do so, including execution by Electronic Signature. Entry into this financing arrangement is not a condition of obtaining insurance. You may opt to pay the premium for such insurance without financing such premium, or to obtain financing from some other source if you choose. If any provision contained in this Agreement should be invalid, illegal, or unenforceable in any respect, it shall not affect or impair the validity, legality, and enforceability of the remaining provisions of this Agreement. Failure to exercise any of its rights or remedies under this Agreement shall not result in any waiver by LENDER of those rights. All representations, warranties, and agreements made by Borrower in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's indebtedness is paid in full.

**PRIOR TO SIGNING THIS AGREEMENT, BORROWER HAS READ AND UNDERSTANDS ALL THE PROVISIONS OF THIS AGREEMENT. BORROWER AGREES TO THE TERMS OF THIS AGREEMENT. BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS AGREEMENT.**